# EXHIBIT A

# Civil Part Case Summary

**Case Number:** PAS L-003628-26

**Case Caption:** University Spine Cen Ter, P.C. Vs Meritain Healt

**Court:** Civil Part
**Venue:** Passaic
**Case Initiation Date:** 10/20/2026
**Case Type:** Other Insurance Claim (Including Declaratory Judgment Actions)
**Case Status:** Active
**Jury Demand:** 6 Jurors
**Case Track:** 1
**Judge:** Daniel D Barnes
**Team:** 3
**Original DED:**
**Current DED:**
**# of DED Extensions:** 0
**Original Arb Date:**
**Current Arb Date:**
**# of Arb Adjournments:** 0
**Original Trial Date:**
**Current Trial Date:**
**# of Trial Adjournments:** 0
**Disposition Date:**
**Case Disposition:** Open
**Statewide Lien:**

## Plaintiffs

**University Spine Center, P.C.**

**Party Description:** Business
**Phone:**
**Address Line 1:**
**Address Line 2:**
**City:**
**State:**
**Zip:** 00000
**Attorney Name:** Palgon Daniel M
**Attorney Bar ID:** 387882022
**Attorney Email:**

## Defendants

**Meritain Health, Inc.**

**Party Description:** Business
**Phone:**
**Address Line 1:** 820 Bear Tavern Road
**Address Line 2:**
**City:** Trenton
**State:** NJ
**Zip:** 08628
**Attorney Name:**
**Attorney Bar ID:**
**Attorney Email:**

## ACMS Documents

| Filed Date | Doc Number | Document Type | Filing Party | Doc Status | CO ID | Type | Date Served | Service Status | Party Served |
|---|---|---|---|---|---|---|---|---|---|
| 10/20/2026 | 001 | COMP JRY DEMAND | UNIVERSITY SPINE CEN | | | | | | |
| 10/23/2026 | 002 | PRF SERVC | UNIVERSITY SPINE CEN | | | | | | |

## Case Actions

| Filed Date | Docket Text | Transaction ID | Entry Date |
|---|---|---|---|
| 10/20/2026 | Complaint with Jury Demand for PAS-L-003628-26 submitted by PALGON, DANIEL MAX, GOTTLIEB AND GREENSPAN LLC on behalf of UNIVERSITY SPINE CENTER, P.C. against MERITAIN HEALTH, INC. | LCV20262807931 | 10/20/2026 |
| 10/21/2026 | TRACK ASSIGNMENT Notice submitted by Case Management | LCV20262815103 | 10/21/2026 |
| 10/23/2026 | AFFIDAVIT OF SERVICE submitted by PALGON, DANIEL, MAX of GOTTLIEB AND GREENSPAN LLC on behalf of UNIVERSITY SPINE CENTER, P.C. against MERITAIN HEALTH, INC. | LCV20262845661 | 10/23/2026 |

**GOTTLIEB & GREENSPAN, LLC**
**Daniel Palgon, Esq. (Attorney ID No.: 387882022)**
**17-17 Route 208, Suite 250**
**Fair Lawn, New Jersey 07410**
**Phone Number: (201) 644-0845**
**Fax Number: (201) 735-0845**
***Attorneys for Plaintiff***

| | |
|---|---|
| UNIVERSITY SPINE CENTER, P.C.,<br><br>Plaintiff,<br><br>v.<br><br>MERITAIN HEALTH, INC.,<br><br>Defendant. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION:<br>PASSAIC COUNTY<br><br>DOCKET NO.:<br><br>CIVIL ACTION<br><br>**COMPLAINT** |

Plaintiff University Spine Center, P.C. ("Plaintiff"), by way of Complaint against Defendant Meritain Health Inc. ("Defendant"), alleges as follows:

## THE PARTIES

### A. The Plaintiff

1. Plaintiff is a medical practice specializing in spine surgery, with its primary office located at 504 Valley Road, Suite 203, Wayne, New Jersey 07470. At all relevant times, Plaintiff was an out-of-network, or non-participating, healthcare provider that provided medical and surgical services to four (4) patients[1] (the "Patients") who are covered under healthcare plans sponsored, funded, operated, controlled and/or administered by Defendant.

[1] To comply with HIPAA confidentiality and patient privacy, each patient will be identified herein only by initials.

**B. The Defendant**

2. Defendant maintains its corporate offices at 300 Corporate Parkway, Amherst, New York 14226. Defendant offers plans that provide healthcare coverage to its members and their dependents, as well as administrative services to self-funded plans. Its plans provide out-of-network health and medical coverage in New Jersey to patients of Plaintiff, including the Patients referenced herein.

## JURISDICTION & VENUE

1. The Court has jurisdiction over Defendant because it (a) conducts business in the State of New Jersey and so derives benefits and privileges from this State, including but not limited to, contracting to provide healthcare plans to residents of New Jersey or contracting to provide plans that permit members or dependents to obtain medical care in New Jersey, and so are subject to New Jersey law, regulation, and oversight governing Defendant's health insurance plans; and/or (b) has consented to the jurisdiction of New Jersey by registering and being authorized to do business in this State.

2. The medical services at issue in this matter were rendered in New Jersey.

3. Pursuant to R. 4:3-2(a)(3), venue is proper in Passaic County, as Plaintiff's office is located in Passaic County, New Jersey.

## SUBSTANTIVE ALLEGATIONS

1. At all relevant times, Plaintiff was an out-of-network, or non-participating, healthcare provider that rendered medical and surgical services to the Patients.

2. On May 5, 2025, Plaintiff provided medical treatment to Patient L.E. at St. Joseph's Hospital, located in Paterson, New Jersey, and expected appropriate payment. At the time of treatment, Patient L.E. was a member of a health plan insured and/or administered by Defendant.

After treating Patient L.E., Plaintiff submitted a Health Insurance Claim Form ("HCFA") medical bill to Defendant seeking payment for the medical treatment rendered itemized under Current Procedural Terminology ("CPT") code 22845, in the amount of $42,487.00.

3. In response to Plaintiff's HCFA, Defendant allowed payment to Plaintiff in the amount of $2,128.88 for CPT code 22845.

4. On June 23, 2025, Plaintiff provided medical treatment to Patient K.M. at St. Joseph's Hospital, located in Paterson, New Jersey, and expected appropriate payment. At the time of treatment, Patient K.M. was a member of a health plan insured and/or administered by Defendant. After treating Patient K.M., Plaintiff submitted a HCFA medical bill to Defendant seeking payment for the medical treatment rendered itemized under CPT code 22853 in the amount of $90,586.00 and CPT code 22551 in the amount of $93,573.00.

5. In response to Plaintiff's HCFA, Defendant allowed payment to Plaintiff in the amount of $1,410.10 for CPT code 22853, and $956.31 for CPT code 22551.

6. On March 17, 2025, Plaintiff provided medical treatment to Patient D.N. at St. Joseph's Hospital, located in Paterson, New Jersey, and expected appropriate payment. At the time of treatment, Patient D.N. was a member of a health plan insured and/or administered by Defendant. After treating Patient D.N., Plaintiff submitted a HCFA medical bill to Defendant seeking payment for the medical treatment rendered itemized under CPT code 22558 in the amount of $91,044.00.

7. In response to Plaintiff's HCFA, Defendant allowed payment to Plaintiff in the amount of $76,546.11 for CPT code 22558.

8. On January 30, 2023, Plaintiff provided medical treatment to Patient P.Q. at St. Joseph's Hospital, located in Paterson, New Jersey, and expected appropriate payment. At the time

of treatment, Patient P.Q. was a member of a health plan insured and/or administered by Defendant. After treating Patient P.Q., Plaintiff submitted a HCFA medical bill to Defendant seeking payment for the medical treatment rendered itemized under CPT code 69990 in the amount of $6,480.00.

9. In response to Plaintiff's HCFA, Defendant allowed payment to Plaintiff in the amount of $5,508.00 for CPT code 69990.

10. Plaintiff required the Patients to complete forms or other documents providing their insurance information. Plaintiff also generated medical records detailing the procedures performed, including operative reports and insurance claim forms referencing the amounts due. Thereafter, Plaintiff submitted timely and appropriate claims to Defendant that included the required information and supporting documents.

11. Defendant routinely receives, processes, and partially pays claims submitted by Plaintiff, thereby acknowledging both the validity of the services rendered and its obligation to provide reimbursement.

12. At all relevant times, Defendant provided the Patients with out-of-network coverage and/or emergency services coverage, thus permitting the Patients to seek treatment from Plaintiff.

13. Defendant is obligated to provide reasonable and appropriate reimbursement for out-of-network and/or emergency services in accordance with applicable state and federal law. Because Plaintiff's services were rendered emergently and/or inadvertently in a participating network facility, reimbursement for those services is governed, in part, by the No Surprises Act ("NSA"), which establishes a framework for determining reimbursement for certain out-of-network services. *See* 42 U.S.C. § 300gg-111 *et seq*. However, Plaintiff's right to recover in this

action arises from independent state law causes of action and the parties' contractual and quasi-contractual obligations.

14. The NSA precludes medical providers from billing patients for amounts beyond applicable in-network cost-sharing obligations and establishes a process for determining appropriate reimbursement for out-of-network services. Under that process, when an issuer makes an initial payment or denial of payment and the provider disputes that amount, the parties must engage in a period of negotiation. If the dispute is not resolved by the end of the negotiation period, either party may initiate an Independent Dispute Resolution ("IDR") proceeding before a neutral third-party certified IDR entity ("CIDRE"), which evaluates the parties' submissions and selects one proposed payment amount as the appropriate reimbursement. The non-prevailing party is then required to remit payment consistent with that determination within thirty (30) days.

15. With respect to the Patients and claims referenced herein, as a matter of regular business practice, Plaintiff engaged in the negotiation of disputes with Defendant and sought proper reimbursement of those disputes pursuant to the NSA. However, Defendant systematically failed to issue proper payment for the medical and surgical services rendered by Plaintiff. Instead, Defendant issued gross underpayments and/or no payment at all. Defendant's actions or inactions were unlawful, improper and arbitrary. Defendant's conduct reflects a pattern and practice of systematically minimizing reimbursement obligations to out-of-network providers.

16. While Plaintiff made repeated and exhaustive efforts to address Defendant's systematic failure to issue proper payment and/or comply with state and federal law, Defendant has refused to remit payment consistent with the IDR determinations.

17. The District Court of New Jersey has repeatedly held that no private right of action exists for medical providers to compel payment of IDR determinations through the Court. *See*

*Mod. Orthopedics of NJ v. Premera Blue Cross*, Case No. 2:25-cv-01807 (BRM) (JSA), 2025 U.S. Dist. LEXIS 215824 at * 23 (D.N.J. Nov. 3, 2025). The NSA, however, does not "preclude a provider from bringing a suit under traditional state-law causes of action." *Id*. "Far from expressing preclusive intent, the NSA's preemption clause is clear:

> [The NSA] shall not be construed to supersede any provision of State law which establishes, implements, or continues in effect any standard or requirement solely relating to health insurance issuers in connection with individual or group health insurance coverage except to the extent that such standard or requirement prevents the application of a requirement of [the NSA.]

42 U.S.C. § 300gg-23. The IDR is an opt-in process, it provides an alternative, streamlined route to determine the amount owed between the parties – it does not displace traditional state-law remedies like unjust enrichment. *Kennedy v. UnitedHealth Grp. Inc.*, No. 25 CIV, 432, 2025 WL 1725147, at *8-9 (S.D.N.Y. June 20, 2025) (holding breach of contract and unjust enrichment claims for failure to pay for patient emergency care were not preempted by the NSA)." *Id*. Thus, where Plaintiff is statutorily prohibited from balance billing its patients, Plaintiff's only method of reimbursement is from Defendant, and Defendant has failed to issue proper payment for out-of-network medical services rendered by Plaintiff, Plaintiff's remedy lies in state law causes of action.

18. Plaintiff seeks damages due to Defendant's actions.

19. Plaintiff's claims are not predicated on an assignment of benefits from the Patients. Because the NSA protects a patient from balance billing, the patient has not sustained any damage and therefore does not have an Employee Retirement Income Security Act ("ERISA") cause of action (or any other) to assign to Plaintiff.

20. Notwithstanding any reference herein to the IDR process established under the NSA, Plaintiff does not seek to enforce a federal statutory right or to assert a private cause of action under the NSA. Rather, Plaintiff asserts independent causes of action arising under New Jersey

statutory, regulatory and common law. Any IDR determinations referenced herein are pled as evidence of the reasonable value of services rendered and Defendant's obligations, and not as the sole basis for liability.

**FIRST COUNT**

**BREACH OF EXPRESS CONTRACT (CLICK-WRAP – NSA IDR)**

21. Plaintiff repeats and realleges each and every allegation set forth above as if set forth in full herein.

22. In each instance, Plaintiff initiated the NSA's IDR process by submitting a Notice of IDR Initiation to the Department of Health and Human Services via the NSA's federal IDR portal. Thereafter, the parties were presented with IDR participation terms, including the federal IDR portal's Terms of Use, the CIDRE's participation agreement.

23. The Offer Process states:

> 1. Submit both administrative fee and IDR entity fee directly to the certified IDR entity.
>
> 2. Complete and submit the Notice of Offer form and supporting documentation.
>
> 3. You will receive an acknowledgment email once the form is submitted and communications for the certified IDR entity if more information is needed related to your offer.
>
> 4. After a certified IDR entity makes a payment determination, the amount due to the prevailing party must be paid no later than 30 calendar days after the determination.

24. Before submitting its Notice of Offer, uploading documents and proceeding with the IDR, each party was required to affirmatively manifest its assent to the following terms and conditions and to acknowledge its assent with an electronic signature:

I agree to

- Pay the administrative fee.
- Pay the IDR entity fee if my dispute is found eligible for the IDR process.
- Pay the outstanding amount (if any) of the out-of-network rate that is my responsibility as determined by the certified IDR entity.
- I also understand that the final payment determination made by the certified IDR entity is binding upon the parties and **not subject to judicial review except under certain limited circumstances**.

25. The parties' mutual agreement to accept and comply with the CIDREs' determinations is sufficient consideration.

26. Under the express terms of the click-wrap agreements, Defendant is required to pay the outstanding amounts as determined by the CIDREs.

27. The parties' agreement to be bound by the IDR process constitutes an independent contractual obligation, separate and apart from any statutory framework.

28. On December 18, 2025, a CIDRE issued a written final determination in Plaintiff's favor under IDR reference number DISP-4371533, awarding Plaintiff $42,487.00 for CPT code 22845, amounting to an additional $40,358.12 over Defendant's initial payment for Patient L.E.

29. On December 2, 2025, a CIDRE issued a written final determination in Plaintiff's favor under IDR reference number DISP-4215901, awarding Plaintiff $76,998.10 for CPT code 22853, amounting to an additional $75,588.00 over Defendant's initial payment for Patient K.M.

30. On December 17, 2025, a CIDRE issued a written final determination in Plaintiff's favor under IDR reference number DISP-4216209, awarding Plaintiff $70,179.75 for CPT code 22551, amounting to an additional $69,223.44 over Defendant's initial payment for Patient K.M.

31. On October 20, 2025, a CIDRE issued a written final determination in Plaintiff's favor under IDR reference number DISP-4168673, awarding Plaintiff $77,387.40 for CPT code 22558, amounting to an additional $841.29 over Defendant's initial payment for Patient D.N.

32. On September 25, 2025, a CIDRE issued a written final determination in Plaintiff's favor under IDR reference number DISP-3980473, awarding Plaintiff $6,480.00 for CPT code 69990, amounting to an additional $972.00 over Defendant's initial payment for Patient P.Q.

33. Despite Defendant's agreement to pay any outstanding amounts as determined by the CIDREs, Defendant has failed to pay any of the CIDRE determinations.

34. Defendant's failure to remit payment within thirty (30) days of the issuance of the CIDRE determinations constitutes an additional and independent breach of its obligations under the parties' agreements. Defendant's failure to comply with the CIDRE determinations deprived Plaintiff of the benefit of its bargain under the parties' agreements. Defendant's refusal to comply with the CIDRE determinations further undermines the agreed-upon dispute resolution process and frustrates the purpose of the parties' agreement.

35. The click-wrap agreements constitute valid express contracts under New Jersey law, supported by mutual consideration, including Plaintiff's opportunity to obtain binding dispute resolution and Defendant's participation in the NSA's IDR process and agreement to be bound by the outcome.

36. Plaintiff seeks, under this Count, to recover the amounts awarded through the IDR process, as Defendant expressly agreed to be bound by such determinations through the parties' click-wrap agreements.

37. These damages arise from Defendant's contractual obligation to comply with the binding determinations issued by the CIDREs, independent of Plaintiff's alternative claims for the reasonable value of the services rendered.

38. Defendant breached the express click-wrap agreements by failing to pay the amounts determined by the CIDREs.

39. In each instance, Defendant's failure to pay the amount determined by the CIDREs constitutes a material breach of contract.

40. As a result of Defendant's breach of contract, Plaintiff has suffered damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant for:

a. Compensatory damages in the amount of $186,982.85;

b. Interest;

c. Costs of suit;

d. Attorneys' fees; and

e. Such other relief as the Court deems equitable and just.

## SECOND COUNT

## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

41. Plaintiff repeats and realleges each and every allegation set forth above as if set forth in full herein.

42. The click-wrap agreements constitute valid express contracts under New Jersey law governing the parties' agreement to participate in the NSA's IDR process and to pay the amounts determined by the CIDREs.

43. In the alternative, the implied-in-fact contract arising from the parties' course of dealing, as pled in the Fourth Count, constitutes a valid and enforceable contract under New Jersey law. The covenant pled under this Count attaches to either contract.

44. The law implies in every contractual relationship, including the click-wrap agreements between Plaintiff and Defendant, a covenant of good faith and fair dealing. Defendant is required to act in a manner that is consistent with Plaintiff's reasonable expectations.

45. Defendant breached this covenant by engaging in bad faith conduct including, but not limited to:

a. Failing to honor binding payment determinations; and

b. Delaying payment without justification.

46. Defendant acted with an improper motive and violated Plaintiff's rights and benefits under the contract and breached the contract through acts of commission and omission described herein that are wrongful and without justification.

47. As a direct and proximate result of Defendant's breach, Plaintiff has suffered damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant for:

a. Compensatory damages;

b. Interest;

c. Costs of suit;

d. Attorneys' fees; and

e. Such other relief as the Court deems equitable and just.

## THIRD COUNT

## THIRD-PARTY BENEFICIARY (Pled Alternatively)

48. Plaintiff repeats and realleges each and every allegation set forth above as if set forth in full herein.

49. The IDR process established under the No Surprises Act requires both providers and insurers to enter into binding agreements with the Centers for Medicare and Medicaid Services ("CMS") as a condition of participation.

50. These agreements require both parties to be bound by the resulting payment determinations.

51. The click-wrap agreement entered into with CMS for the IDR process is expressly intended to benefit both healthcare providers and healthcare insurance carriers by ensuring fair and enforceable reimbursement for medical services rendered.

52. The requirement that providers who prevail in the IDR process be paid in accordance with IDR determinations demonstrates that healthcare providers were intended, not incidental, beneficiaries of those agreements.

53. Plaintiff is a member of the class of intended beneficiaries of Defendant’s click-wrap agreements with CMS.

54. Defendant’s refusal to comply with the binding IDR determinations frustrates the purpose of the click-wrap agreements and deprives Plaintiff of the benefits intended to be conferred.

55. Accordingly, Plaintiff is entitled to enforce Defendant’s obligations as an intended third-party beneficiary.

**WHEREFORE,** Plaintiff demands judgment against Defendant for:

a. Compensatory damages;

b. Interest;

c. Costs of suit;

d. Attorneys’ fees; and

e. Such other relief as the Court deems equitable and just.

## FOURTH COUNT

**BREACH OF IMPLIED-IN-FACT CONTRACT (Pled Alternatively)**

56. Plaintiff repeats and realleges each and every allegation set forth above as if set forth in full herein.

57. Plaintiff pleads this Count in the alternative to the Third Count and without prejudice to it, in the event the Court determines that the click-wrap agreements do not constitute express contracts between Plaintiff and Defendant.

58. At all relevant times, Defendant received, reviewed, adjudicated and paid claims submitted by Plaintiff for medical and surgical services rendered to Defendant's members and their dependents.

59. Through an established and ongoing course of dealing between the parties, an implied-in-fact contract arose from the parties' conduct and mutual assent, as demonstrated by:

a. Plaintiff's provision of medical and surgical services to Defendant's members and their dependents with the reasonable expectation of payment;

b. Plaintiff's submission of HCFAs and supporting documentation in accordance with Defendant's claims-processing requirements;

c. Defendant's receipt, review and adjudication of those claims;

d. Defendant's issuance of EOBs identifying allowed amounts and payment responsibility;

e. Defendant's partial payment of certain of those claims, including the partial payments identified above; and

f. Defendant's participation in the open negotiation and IDR processes concerning the amounts owed on those claims.

60. The parties' conduct manifested mutual assent that Plaintiff would render medical and surgical services to Defendant's members and that Defendant would process and remit

payment for those services in accordance with its established payment practices and applicable law.

61. The consideration for the implied-in-fact contract consisted of Plaintiff's rendering of medical and surgical services that discharged Defendant's obligations to its members, in exchange for Defendant's undertaking to process and remit payment for those services.

62. Plaintiff fully performed its obligations under the implied-in-fact contract by rendering the services at issue and by submitting timely and complete claims and supporting documentation consistent with Defendant's requirements and industry standards.

63. Defendant breached the implied-in-fact contract by failing to honor the payment obligations arising from the parties' course of dealing, including by:

a. Failing to remit payment, or remitting only partial payment, for the services rendered;

b. Issuing payment determinations inconsistent with its own established payment practices;

c. Unreasonably delaying payment following receipt of complete claims and supporting documentation;

d. Failing to remit the balances established through the IDR process which balances are pled under this Count solely as evidence of the amounts due and not as an independent federal claim; and

e. Retaining the benefit of Plaintiff's performance without payment as contemplated by the parties' established course of conduct.

64. Defendant's breaches deprived Plaintiff of the benefit of the parties' implied agreement.

65. As a direct and proximate result of Defendant's breach, Plaintiff has suffered damages, including the unpaid amounts due, administrative and collection costs, and the loss of the time value of money.

**WHEREFORE**, Plaintiff demands judgment against Defendant for:

a. Compensatory damages;

b. Interest;

c. Costs of suit;

d. Attorneys' fees; and

e. Such other relief as the Court deems equitable and just.

## FIFTH COUNT

## DECLARATORY JUDGMENT

66. Plaintiff repeats and realleges each and every allegation set forth above as if set forth in full herein.

67. An actual and justiciable controversy exists between the parties regarding Defendant's obligation to reimburse Plaintiff for medical services rendered to its members and their dependents.

68. Plaintiff seeks a declaration that:

a. Defendant is obligated to pay for the medical services provided;

b. Defendant is obligated to reimburse Plaintiff in accordance with applicable law, governing agreements, and binding dispute resolution mechanisms, including those to which Defendant expressly assented through participation in the IDR process.

c. Defendant's failure to comply with such determinations is unlawful and improper; and

d. Plaintiff is entitled to payment in accordance with applicable law and governing agreements.

69. A declaratory judgment will resolve uncertainty and guide the parties' future conduct.

**WHEREFORE**, Plaintiff demands judgment against Defendant for:

a. Compensatory damages;

b. Interest;

c. Costs of suit;

d. Attorneys' fees; and

e. Such other relief as the Court deems equitable and just.

**SIXTH COUNT**

**ACCOUNT STATED**

70. Plaintiff repeats and realleges each and every allegation set forth above as if set forth in full herein.

71. Plaintiff rendered medical services to Defendant's members and their dependents and submitted HCFAs to Defendant reflecting the amounts due.

72. Defendant received and retained those HCFAs.

73. Defendant failed to object to the HCFAs within a reasonable time and/or made partial payments acknowledging the validity of the charges, without disputing the underlying services.

74. Defendant's conduct constitutes an implied agreement as to the correctness of the amounts due.

75. An account stated exists for the outstanding balance.

76. Defendant has failed to pay the agreed-upon amount.

77. Plaintiff is entitled to recover the balance due.

**WHEREFORE**, Plaintiff demands judgment against Defendant for:

a. Compensatory damages;

b. Interest;

c. Costs of suit;

d. Attorneys' fees; and

e. Such other relief as the Court deems equitable and just.

**<u>SEVENTH COUNT</u>**

**UNJUST ENRICHMENT (Pled in the Alternative)**

78. Plaintiff repeats and realleges each and every allegation set forth above as if set forth in full herein.

79. Defendant received the benefits of the underlying medical services Plaintiff rendered to Defendant's members. These medical services were provided at Plaintiff's expense and under circumstances that would make it unjust for Defendant to retain the benefits without commensurate compensation.

80. Defendant had reasonable notice that Plaintiff expected payment for the benefits conferred, as it received HCFAs from Plaintiff that set forth the amounts billed for the medical services Plaintiff rendered to Defendant's members. Defendant appreciates, realizes and knows that the benefits were conferred because it issued Explanations of Benefits ("EOBs") and made initial payments. Thus, there was a direct connection between Plaintiff's impoverishment and Defendant's enrichment.

81. At all relevant times, Defendant refused to render appropriate payments to Plaintiff for the medical services rendered to its members covered under plans sponsored, funded, insured and/or administered by Defendant, contrary to the insurance provided by the respective plans to its members and dependents, and contrary to the common law, statutory and regulatory obligations of Defendant.

82. Defendant was paid premiums by its members for out-of-network and/or emergency services coverage and, pursuant to those premiums, Defendant was legally obligated to provide such coverage to plan members and their dependents.

83. To satisfy its coverage and legal obligations, Defendant required the services of Plaintiff to render medical services, including emergency and urgent medical care where applicable. Plaintiff did, in fact, render such medical services to Defendant's members and their dependents.

84. Defendant has, therefore, received and retained a benefit as a result of Plaintiff rendering medical services that remain grossly underpaid. Thus, Defendant has been unjustly enriched through the use of funds that earned interest or otherwise added to its profits when that money should have been paid in a timely and appropriate manner to Plaintiff. It is against equity and good conscience to deprive Plaintiff of the funds Defendant owes.

85. As a result of Defendant's unjust enrichment, Plaintiff has suffered damages.

86. The damages sought under this Count include the full reasonable value of Plaintiff's services, as reflected by Plaintiff's billed charges and other objective indicators of value, including the amounts awarded through the IDR process. Plaintiff pleads the IDR determinations under this Count solely as objective evidence of the reasonable value of the services rendered and not as an independent federal claim or as the sole basis for liability.

**WHEREFORE**, Plaintiff demands judgment against Defendant for:

a. Compensatory damages in the amount of $237,620.60, representing the reasonable value of Plaintiff's services less all amounts previously remitted by Defendant;

b. Alternatively compensatory damages in an amount that is just and equitable;

c. Interest;

d. Costs of suit;

e. Attorneys' fees; and

f. Such other relief as the Court deems equitable and just.

**EIGHTH COUNT**

**QUANTUM MERUIT (Pled in the Alternative)**

87. Plaintiff repeats and realleges each and every allegation set forth above as if set forth in full herein.

88. Plaintiff conferred a valuable benefit upon Defendant by providing good faith medical services to Defendant's members and their dependents at Plaintiff's expense, with the reasonable expectation of payment.

89. Defendant knowingly accepted and retained the benefits from the medical services Plaintiff rendered to its members and their dependents under the plans sponsored, funded, insured and/or administered by Defendant.

90. Defendant had reasonable notice that Plaintiff expected payment for the medical services provided to Defendant's members and their dependents as Defendant received HCFAs from Plaintiff that set forth the amounts billed for the medical services provided. Defendant appreciates, realizes and knows that Plaintiff expected payment for the medical services provided to its members and their dependents because it issued EOBs and made initial payments.

91. At all relevant times, Defendant refused to render appropriate payments to Plaintiff for the medical services provided to its members and their dependents covered under plans sponsored, funded, insured and/or administered by Defendant, contrary to the insurance provided by the respective plans to its members and their dependents, and contrary to the common law, statutory and regulatory obligations of Defendant.

92. It is inequitable for Defendant to retain the benefits of Plaintiff's medical services without paying the reasonable value for Plaintiff's services.

93. Plaintiff is therefore entitled to recover under the doctrine of quantum meruit the fair and reasonable value of the medical services rendered by Plaintiff to Defendant's members and their dependents.

94. Plaintiff seeks recovery under this Count for the fair and reasonable value of its services, including its billed charges, as an alternative to its contractual claims. Any IDR determination referenced under this Count is pled solely as objective evidence of the reasonable value of the services rendered.

95. As a result of Defendant's failure to pay the fair and reasonable value for the medical services Plaintiff rendered to Defendant's members and their dependents, Plaintiff has suffered damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant for:

a. Compensatory damages in the amount of $237,620.60, representing the fair and reasonable value of Plaintiff's services less all amounts previously remitted by Defendant;

b. Interest;

c. Costs of suit;

d. Attorney's fees; and

e. Such other relief as the Court deems equitable and just.

**<u>NINTH COUNT</u>**

**VIOLATION OF NEW JERSEY PROMPT PAYMENT OF CLAIMS ACT**

96. Plaintiff repeats and realleges each and every allegation set forth above as if set forth in full herein.

97. Plaintiff avers this cause of action to the extent Defendant is an insurer or carrier subject to New Jersey's prompt payment requirements, including N.J.S.A. 17B:27-44.2, N.J.S.A. 17B:26-9.1 and the implementing regulations promulgated at N.J.A.C. 11:22-1.1 et seq. (collectively, the "Prompt Payment Act").

98. Under the Prompt Payment Act, a carrier must remit payment on a clean claim within thirty (30) calendar days of receipt where the claim is submitted by electronic means, and within forty (40) calendar days of receipt where the claim is submitted by other than electronic means. N.J.A.C. 11:22-1.5(a).

99. Where a carrier disputes or denies a claim in whole or in part, it must notify the provider within that same thirty (30) or forty (40) day period and must state the specific basis for the dispute or denial and identify any additional information required to process the claim. A claim as to which the required notice is not given is overdue.

100. A carrier that fails to pay a clean claim within the applicable time limit must include simple interest on the claim amount at the rate of twelve percent (12%) per year, with interest accruing beginning thirty (30) or forty (40) days, as applicable, from the date all information and documentation required to process the claim was received by the carrier. N.J.A.C. 11:22-1.5(e).

101. Plaintiff submitted clean claims to Defendant for medical services rendered to Defendant's insureds, including, but not limited to, the claims described herein. Each such claim was submitted with the information and documentation reasonably necessary for Defendant to adjudicate it and to determine its liability, and each therefore constituted a clean claim within the meaning of the Prompt Payment Act.

102. In response to Plaintiff's claims, Defendant issued partial payments and/or denied payment as prescribed by the NSA.

103. Plaintiff then proceeded to dispute Defendant's partial payments and/or denial of payment via the NSA's IDR process, resulting in IDR determinations in Plaintiff's favor or in Defendant's favor in which Defendant was still required to issue additional payment based on the underpayment of the initial allowed amount.

104. Under the NSA, multiple CIDREs issued final and binding determinations establishing the proper reimbursement amount for the out-of-network claims described herein.

105. Defendant opted not to remit the IDR determination payments. Thus, Defendant utilized the NSA for purposes of calculating its initial payments only to "opt out" of the NSA following the IDR determinations.

106. By failing to comply with the IDR determinations, Defendant no longer has any justification for its initial ***partial*** payments.

107. Accordingly, the claims described herein were not processed or paid within the timeframes required by the Prompt Payment Act, namely thirty (30) calendar days for claims submitted by electronic means and forty (40) calendar days for claims submitted by other than electronic means.

108. Defendant further failed to provide, within the applicable thirty (30) or forty (40) day period, written notice stating the specific basis for any dispute or denial of the claims and identifying any additional information required to process them, as the Prompt Payment Act requires. The claims are therefore overdue.

109. Defendant instead issued partial payments, delayed payments, and/or denied payment without justification, in violation of its statutory obligations.

110. As a result, Defendant is liable for the unpaid amounts due, together with simple interest at the rate of twelve percent (12%) per year accruing from the expiration of the applicable

thirty (30) or forty (40) day period, and any additional relief permitted under the Prompt Payment Act.

**WHEREFORE**, Plaintiff demands judgment against Defendant for:

a. Compensatory damages;

b. Interest;

c. Costs of suit;

d. Attorneys' fees; and

e. Such other relief as the Court deems equitable and just.

## CLAIM FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendant for:

a. Compensatory damages;

b. Punitive damages;

c. Interest;

d. Injunctive relief;

e. Costs of suit;

f. Attorneys' fees; and

g. Such other relief as the Court deems equitable and just.

Dated: October 20, 2026

**GOTTLIEB & GREENSPAN, LLC**
*Attorneys for Plaintiff*

*/s/ Daniel Palgon*
Daniel Palgon, Esq.

## DESIGNATION OF TRIAL COUNSEL

Pursuant to R. 4:25-4, Daniel Palgon, Esq. is hereby designated as trial counsel in the above-captioned litigation on behalf of the law firm of Gottlieb & Greenspan, LLC.

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

## CERTIFICATION PURSUANT TO RULE 1:38-7(b)

I certify that confidential personal identifiers have been redacted from documents now submitted to the Court and will be redacted from all documents submitted in the future.

## CERTIFICATION PURSUANT TO RULE 4:5-1

The matter in controversy is not the subject of any other action pending in any other Court. There are no pending arbitration proceedings. No non-party is known who would be subject to joinder because of potential liability.

Dated: October 20, 2026

**GOTTLIEB & GREENSPAN, LLC**
*Attorneys for Plaintiff*

*/s/ Daniel Palgon*
Daniel Palgon, Esq.

# Civil Case Information Statement

## Case Details: PASSAIC | Civil Part Docket# L-003628-26

**Case Caption:** UNIVERSITY SPINE CEN TER, P.C. VS MERITAIN HEALT
**Case Initiation Date:** 10/20/2026
**Attorney Name:** DANIEL MAX PALGON
**Firm Name:** GOTTLIEB AND GREENSPAN LLC
**Address:** 17-17 ROUTE 208 SUITE 250
FAIR LAWN NJ 07410
**Phone:** 2016440894
**Name of Party:** PLAINTIFF : UNIVERSITY SPINE CENTER, P.C.
**Name of Defendant's Primary Insurance Company** (if known): None

**Case Type:** OTHER INSURANCE CLAIM (INCLUDING DECLARATORY JUDGMENT ACTIONS)
**Document Type:** Complaint with Jury Demand
**Jury Demand:** YES - 6 JURORS
**Is this a professional malpractice case?** NO
**Related cases pending:** NO
**If yes, list docket numbers:**
**Do you anticipate adding any parties (arising out of same transaction or occurrence)?** NO
**Does this case involve claims related to COVID-19? NO**

**Are sexual abuse claims alleged by: UNIVERSITY SPINE CENTER, P.C.? NO**

**THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE**
**CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION**

**Do parties have a current, past, or recurrent relationship?** NO

**If yes, is that relationship:**

**Does the statute governing this case provide for payment of fees by the losing party?** NO

**Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition:**

**Do you or your client need any disability accommodations?** NO
**If yes, please identify the requested accommodation:**

**Will an interpreter be needed?** NO
**If yes, for what language:**

**Please check off each applicable category: Putative Class Action?** NO **Title 59?** NO **Consumer Fraud?** NO **Medical Debt Claim?** NO

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

10/20/2026
Dated

/s/ DANIEL MAX PALGON
Signed

PASSAIC SUPERIOR COURT
PASSAIC COUNTY COURTHOUSE
77 HAMILTON STREET
PATERSON NJ 07505

TRACK ASSIGNMENT NOTICE

COURT TELEPHONE NO. (973) 653-2910
COURT HOURS 8:30 AM - 4:30 PM

DATE: OCTOBER 20, 2026
RE: UNIVERSITY SPINE CEN TER, P.C. VS MERITAIN HEALT
DOCKET: PAS L -003628 26

THE ABOVE CASE HAS BEEN ASSIGNED TO: TRACK 1.

DISCOVERY IS 150 DAYS AND RUNS FROM THE FIRST ANSWER OR 90 DAYS FROM SERVICE ON THE FIRST DEFENDANT, WHICHEVER COMES FIRST.

THE PRETRIAL JUDGE ASSIGNED IS: HON DANIEL D. BARNES

IF YOU HAVE ANY QUESTIONS, CONTACT TEAM 003 AT: (973) 653-2910 EXT 24299.

IF YOU BELIEVE THAT THE TRACK IS INAPPROPRIATE YOU MUST FILE A CERTIFICATION OF GOOD CAUSE WITHIN 30 DAYS OF THE FILING OF YOUR PLEADING.

PLAINTIFF MUST SERVE COPIES OF THIS FORM ON ALL OTHER PARTIES IN ACCORDANCE WITH R.4:5A-2.

ATTENTION:

ATT: DANIEL M. PALGON
GOTTLIEB AND GREENSPAN LLC
17-17 ROUTE 208
SUITE 250
FAIR LAWN NJ 07410

ECOURTS

8 7 3 7 1 0

SUPERIOR COURT OF NEW JERSEY
LAW DIVISION:
PASSAIC COUNTY

DOCKET NO. PAS-L-003628-26

Plaintiff
UNIVERSITY SPINE CENTER, P.C.

vs

Defendant
MERITAIN HEALTH, INC.

# AFFIDAVIT OF SERVICE
(for use by Private Service)

Cost of Service pursuant to R4:4-30
$ ______________

Person to be served: MERITAIN HEALTH, INC.
C/O CT CORPORATION SYSTEM, REGISTERED AGENT
Address:
820 BEAR TAVERN ROAD
TRENTON NJ 08628

Attorney:
GOTTLIEB & GREENSPAN
17-17 ROUTE 208 SUITE 250
FAIR LAWN NJ 07410

Papers Served:
SUMMONS, COMPLAINT & CASE INFORMATION STATEMENT;

Service Data:

Served Successfully ✓ Not Served ______ Date: 10-21-26 Time: 9:21am. Attempts: ______

____ Delivered a copy to him/her personally

____ Left a copy with a competent household member over 14 years of age residing therein at place of abode.

✓ Left a copy with a person authorized to accept service, e.g. managing agent, registered agent, etc.

Name of Person Served and relationship/title
Dianne Evans
PERSON IN CHARGE AT THE OFFICE OF THE REGISTERED AGENT OF THE CORPORATION

Description of Person Accepting Service:
Age: 53 Height: 5'6 Weight: 150 Hair: Black Sex: Female Race: Black

Non-Served:
( ) Defendant is unknown at the address furnished by the attorney
( ) All reasonable inquiries suggest defendant moved to an undetermined address
( ) No such street in municipality
( ) No response on: ____________ Date ____________ Time
____________ Date ____________ Time
____________ Date ____________ Time
( ) Other: ____________ Comments or Remarks ____________

Subscribed and Sworn to me this
22 day of October 2026

I, AZIZA AMER, was at time of service a competent adult not having a direct interest in the litigation. I declare under penalty of perjury that the foregoing is true and correct.

Patricia Knapp (DIGITALLY SIGNED)
Notary Signature

PATRICIA E KNAPP
Notary Public, State of New Jersey
Comm. # 2447530
My Commission Expires 06/25/2029

Online Notary Public. This notarial act involved the use of online audio/video communication technology.
Notarization facilitated by SIGNiX®

Aziza Amer (DIGITALLY SIGNED) 10/22/2026 12:17 PM EDT
Signature of Process Server Date

DGR LEGAL, INC.
1359 Littleton Road, Morris Plains, NJ 07950-3000
(973) 403-1700 Fax (973) 403-9222

Work Order No. 873710
File No. PAS-L-003628-26

**Daniel Palgon, Esq.**
**Attorney ID No.: 387882022**
**GOTTLIEB & GREENSPAN, LLC**
**17-17 Route 208, Suite 250**
**Fair Lawn, New Jersey 07410**
**Phone Number: 201-644-0845**
**Fax Number: 201-644-0845**
*Attorneys for Plaintiff*

| | |
|---|---|
| UNIVERSITY SPINE CENTER, P.C., | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION: PASSAIC COUNTY |
| Plaintiff(s) | |
| vs. | DOCKET NO. PAS-L-003628-26 |
| MERITAIN HEALTH, INC., | **Civil Action** |
| Defendant(s) | **SUMMONS** |

From The State of New Jersey, To The Defendant(s) Named Above:

**MERITAIN HEALTH, INC.**

The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons stated the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof or service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (The address of each deputy clerk of the Superior Court is available in the Civil Division Management Office in the county listed above and online at http://www.judiciary.state.nj.us. If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, New Jersey 08625-0971. A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with the fee and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

If you cannot afford an attorney, you may call the Legal Services office in the county where you live or the Legal Services of New Jersey Statewide Hotline at 1-888-LSNJ-LAW (1-888-576-5529). If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A directory with contact information for local Legal Services Offices and Lawyer Referral Services is available http://www.judiciary.state.nj.us.

*/S/ Michelle M. Smith*
Michelle M. Smith, Clerk
Superior Court of New Jersey

Dated: October 20, 2026

Name of Defendant to be Served: MERITAIN HEALTH, INC., c/o CT Corporation System, Registered Agent, 820 Bear Tavern Road, Trenton, NJ 08628

*** $105.00 For Chancery Division Cases or $135.00 for Law Division Cases**